*770 OPINION.
Arundell :
In this proceeding the petitioner contends that its income during each year was primarily ascri bable to the activities of its principal stockholders and that capital was not a material income-producing factor. Those contentions are denied by the respondent.
During the year 1918 the active stockholders consisted of Louis E. Holland and H. S. Stark, who held a total of 64.52 per cent of the corporation’s outstanding capital stock. During the years 1919 and 1920 the holdings of these and other active stockholders amounted to 67 per cent of the whole. No difference of opinion exists between the parties hereto as to the ownership of stock or the classification of the stockholders as to active and inactive.
Counsel for the petitioner are of the opinion that since the active stockholders at all times held more than 50 per cent of the corporation’s outstanding capital stock, they are necessarily the principal owners or stockholders thereof within the meaning of section 200 of the Revenue Act of 1918, and provided the other requirements of the Act are met, personal service classification should not.be denied because a greater amount of stock was not held by them. No authority is cited in support of this statement.
The difficulty with this class of cases is that the statute lays down no definite rule and the decision in each case must depend upon its peculiar facts. Bryant & Stratton Commercial School, Inc., 1 B. T. A. 32. In applying the statute to the facts it is always necessary to bear in mind what was sought to be accomplished. It was well known that there were a number of corporations engaged in rendering the same sort of personal service that individuals and partnerships were rendering, and that capital played little or no part in producing the income. It was sought by section 200 to put these corporations on the same plane as partnerships with the income taxable to the individuals composing them.
We have here a case where approximately two-thirds of the stock is owned by stockholders regularly engaged in the active conduct of the affairs of the corporation, but is this sufficient to meet the test of the statute? The case of Matteson Co. v. Willcuts, 12 Fed. (2d) 447, was one where 36 per cent of the stock was held by two stockholders found by the court not to be regularly engaged in the active conduct of the business. In discussing this phase of the matter, the court said:
It is necessary, not only that the income of the corporation shall be derived from personal service, but also that it shall be derived primarily from the activities of those who principally are to share in that income, and therefore in the benefits of the law. If this were not so, the personal service in such *771 cases might be rendered by one or two, or a few only, and others largely interested in the corporation, but rendering no service, might be capitalizing the efforts of these few and realizing a profit therefrom.
To approximate the situation where similar service is rendered by copart-nerships, it is necessary that those who, principally, are to have the benefit of the law, must be engaged in a substantial way in rendering the personal service which the corporation claims to provide. Any substantial departure from this rule would be extending the law in such manner as to create a favored class, and would be wholly without justification. It is not necessary under the law that each stockholder shall be engaged in rendering the personal service, but the letter and spirit of the law both require that the great body of the stock shall be in the hands of those who are rendering this service.
To the same effect are. various decisions of the. Board. In G. F. Cotter Supply Co., 1 B. T. A. 1108, we denied personal service classification solely upon the ground that 40 per cent of the stock was in the hands of an inactive stockholder, and in Home Insurance Agency, 5 B. T. A. 1020, the same conclusion was reached where the inactive stockholders held 35 and 49^ per cent of the corporation’s stock in 1918 and 1919, respectively. In denying the petitioner’s claim for personal service we said:
It is manifest that the non-active stockholders held too large a percentage of the total stock to justify a holding that there was a substantial compliance with the first prerequisite laid down by the statute. Such being the case, it becomes unnecessary to consider the remaining requirements of the statute as a prerequisite to personal service classification.
Also compare Joseph Emsheimer Insurance Agency, 1 B. T. A. 649; Harvey Friction Spring Co., 11 B. T. A. 309.
Aside from the matter of stock ownership, there is still the serious question of whether the income was primarily due to the activities of the active stockholders and whether capital was not a material income-producing factor.
The testimony of record is to the effect that Louis E. Holland produced, and H. S. Stark secured, 85 and 15 per cent, respectively, of the petitioner’s business. Louis E. Holland was, and is, a prominent figure in the advertising field, especially in the section of the country in which the petitioner has its principal place of business, and produced a considerable amount of business for the petitioner because of his prominence and recognized ability, but to say that he, together with Stark, obtained or were responsible for all of the orders filled by the corporation is too much to accept as true in view of other facts shown by the record. For instance, during the three years in question around $10,000 was expended in advertising for business, and while it was testified that no results could be traced directly to this form of soliciting orders, it is not unreasonable to assume that some business was derived therefrom, in connection with which capital was used. And the record clearly shows that in some *772 instances the advertising agencies; before placing their orders, did part or all of the preliminary work, such as the copy, leaving for the petitioner only the making of the necessary plates, etc. The record is silent as to the number and amount of orders filled of this character, il. partial list of petitioner’s clients from whom $31,679.03, $63,982.75 and- $77,980.25 was received for services performed and articles manufactured in 1918, 1919 and 1920, respectively, contains the names of two advertising agencies, which in 1918, 1919 and 1920 paid to the petitioner the sums of $22,320.24, $53,644.07 and $57,164.64, respectively. The amounts received from this source, part of which was for a manufactured article, are large in comparison with the gross revenue of the petitioner, and can not be ignored in passing upon a question of the kind before us.
During the taxable years the petitioner specialized in the planning and preparation of catalogues for advertisers, in connection with which Louis E. Holland and H. S. Stark rendered a service strictly personal in character. No attempt was made to show how much of the gross income of the petitioner was derived from this source aside from testimony that the major portion of the total income was obtained therefrom and the manufacture of photo-engravings in con< nection therewith. The record is also silent as to the volume of revenue derived from other avenues, such as the production of plates not intended for catalogues, circulars and the like, prepared by the petitioner.
Louis E. Holland, as general manager, had general supervision of the plant, and he, as well as H. S. Stark, with the assistance of W. H. Holland, superintendent of the plant, supervised to some extent the production of such work as they obtained orders for. Although there is much testimony in the record that. Louis E. Holland and H. S. Stark closely supervised such work, the evidentiary value of it is weakened by the fact that they spent about 50 per cent of their time outside of the plant soliciting or taking ca-re of the business. Louis E. Holland, in describing the manner in which a photo-engraving is manufactured from copy, made,no mention of supervisory work on the part of the person who took the order beyond the giving of instructions to the superintendent of the plant “ as to the manner of plato that is wanted and the results that are expected.” W. H. Holland, a nonstockholder untjl May 29, 1919, was employed to closely supervise the production of plates and he, rather than the other active stockholders, doubtless performed the bulk of the supervisory work.
To properly transact the class of business in which the petitioner was engaged, it was required to, and did, employ from 9 to 12 artists each year, and, as the occasion required, outside artists were engaged for special jobs. It also employed jn its plant a large number of *773 other skilled employees -whose services were necessary to the conduct of the business.
If we were to hold that capital did not contribute in the production of income, we would have to overlook the presence of capital purposely set aside to carry accounts receivable, amounting, at the close of 1920, to $39,391.04, without borrowed money. The terms of-payment on bills rendered advertising agencies were liberal and required considerable working capital at all times to carry the accounts. Each year the petitioner had largo sums invested in plant equipment. In 1920 duplicate machines were installed throughout the' plant, thus indicating that the petitioner’s business of producing plates, as distinguished from the personal service of planning catalogues, was on the increase.
The petitioner relies upon Cock-Clark Engraving Co., 8 B. T. A. 468, and Westermann & Pagano, Inc., 2 B. T. A. 1308, for a similar holding here. The facts in this case differ in several material respects from the facts in those proceedings. In the former case all of .the stock, with the exception of four shares out of a total of 5,000, was in the hands of two active stockholders. In the latter case, all of the stockholders were regularly engaged in the active conduct of the business. The facts involved in this proceeding differ from those in the cases cited in other respects.
From all the facts and circumstances we must hold that the petitioner fails to meet the requirements of the Act.

Judgment will be entered for the respondént.